The opinion of the Court was delivered by
Paddock, J.
It appears that in the first of the year, 1820, Samuel Hurlburt, Canfield Donvin, and T. M. Dorwin, formed a co-partnership in trade, which continued until the first of April, 1821, whan they dissolved and settled up their concerns -as between themselves. Hurlburt left the country previous to 1828, but at what particular time, does not appear. When he left he deposited his papers in a box, and made it fast. In this box, it is said, the note in question was deposited. The 9th of May, 1828, Hurlburt addressed a letter to J. McNeil, in which it appears that Hurlburt and the Dorwins had money of Jerusha Woodford, (one of the plaintiffs,) and that the note in question would be found in the box. The two letters which the plaintiffs contend contain evidence of a new promise, or acknowledgement *87 of the debt, are ambiguous: it does not distinctly appear that the money,which he says was borrowed of Mrs. Woodford, formed tiie consideration for the note, though it may be inferred. first he says, “ William, has written me that Dorwins refuse to do any thing about the note signed by them with me to Mrs. Wood-ford. I hare no distinct recollection about my settlement with Dorwins, &c.” Again, “ I had none of the ‡280 note you went after, which is in with your note in a box nailed up.” He then gives assurances that he will secure the plaintiffs and pay all he owes them shortly. In the other of December 15, Í828, he says, “ some time or other Messrs. C. & T. M. Dorwins and I, had some money of Mother Woodford, for our company’s use, and she not wanting it, we kept it until we dissolved ; and he says I was to pay that particular debt, and he the others.” At the trial before the county court, the jury were instructed, that there could be no recovery on the note, as it did not appear to have been delivered by the firm to the plaintiffs or any other one, without which the contract was not complete.
It is an essential ingredient in every contract entered into by writing, that it be delivered by the party, obligating himself, to some one who has a right to control it; the delivery, being the evidence of the assent of the promissor, and the reception by the promissee, consummates the contract. And without a delivery, the party is not bound by the writing. It is not, however, necessary that the holder of a bill, note or other instrument, should prove the delivery ; for the law will presume a delivery, unless something should be made to- appear which counteracts such presumption. Churchill vs. Gardner, 7 T. R. 596.—Smith vs. M’Clure, 5 East. 476.—Chit. on Bills, 322.—3 Chit. Pl. 1 & 2.
There is nothing to support the suggestion that Hurlburt acted as the agent of Mrs. Woodford : there is no. expression in the letters from which such a conclusion could be drawn. The bill of exceptions states that there was some evidence introduced shewing that Hurlburt acted as agent to Mrs. Woodford, before and at the time of her marriage, which was three months before the date of the note. Supposing he did, the marriage put an end to his authority to act, and we hear.of no subsequent appointment by her or Woodford, nor act of his countenancing such a surmise.
It remains to be considered, whether, after the dissolution of a partnership, one of the number can bind the others to a contract *88 vvhich did not exist at the time of the dissolution : and it is nothing short of that which the plaintiffs ask for in this case. It is not to sanction Hurlburt’s doing an act which affects partnership property; nor yet to explain a partnership transaction ; nor his admission of an unpaid debt against the firm : but it is to permit him, seven years after the connection is dissolved, to do a substantive act, by which a new obligation and new liabilities are brought upon his late partners, and to pronounce it legal. Such an act, if sanctioned, would be aiming a most deadly blow at all mercantile associations, which by common consent are considered highly beneficial to the interest and prosperity of our country. Partners are already sufficiently exposed from the mismanagement and frequently improper conduct of some of their number. But put it in the power of a dishonest partner, and perhaps a dissatisfied one, after the close of the concern, to put the company paper in circulation which might have been executed before the dissolution, or ante dated, and he would be sure to bring rtiin and destruction upon the whole number. There can be no difference between delivering a note purporting to have been executed by the firm to the payee, or endorsing a note in the name of the firm, or delivering one, which had been previously endorsed, to the endorsee.— And upon this point Lord Kenyon remarks, (Abel vs. Sutton, 3 Esp. R. 108, cited by counsel) “If a fair bill existed at the time of the partnership, but is not put into circulation until after the dissolution, all the partners must join in making it negotiable. The moment a partnership ceases, the partners become distinct persons, and if they send securities into the world which did not belong to the partnership, all must join in doing so. I even doubt very much, if an endorsement was actually made orva bill or note before the dissolution, but not sent into the world until afterwards, that such endorsement would be valid ; and to contend that this liability to be bound by the act of a partner after the dissolution, was in his mind a most monstrous proposition.” And the same principle was maintained in Kilgour vs. Finlyson, 1 H. B. 155.—In Lansing vs. Gaine & Ten Eyck (2 Johns, 300) being a case precisely in point, Ch. J. Kent says, “ The date of the notes then becomes immaterial, as they were valid only from their delivery, and, unless the contrary be shown, the presumption will be that they were actually drawn,and were ante-dated by mistake or design. To all legal purposes, the notes are to be considered as made or drawn when they were delivered.” “ The fact then that the notes were issued by Ten Eyck after the partnership was dis *89 solved, was sufficient to exempt Gaine from being bound by the tsotes, even if they had been given for a partnership debt.” And of this opinion were the whole court.
N. Hawley, for plaintiffs.
S. S. Phelps, for defendant.
The fact of Hurlburt’s retaining the note in his possession for seven years carries a suspicion' with it. If the amount was actually due to Mrs. Woodford, is it reasonable to conclude that it would not have been called for ? and if called for, it is incredible that Hurlburt would not have delivered over the note, if it had been executed for such a length of time, and in his possession, for that purpose. The conviction seems to force itself upon the mind that it was either made for a mere memorandum, if written at the date, or that it was ante dated for the use it was afterwards put to. Be that as it may, it will not vary the decision, as the court are satisfied that the note ought to take effect from the delivery ; and as the firm had then long been dissolved, it had no binding effect whatever upon this defendant. Therefore, the judgement of the county court must be affirmed.
Judgement affirmed.